UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL SRAMEK,<br>        *Plaintiff*,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE<br>COMPANY, *et al.*,<br>        *Defendants.* | No. 1:25-cv-00576-MSN-LRV |

**MEMORANDUM OPINION**

Plaintiff Michael Sramek has filed a complaint against Defendants United of Omaha Life Insurance Company ("United of Omaha") and Long-Term Disability Benefits Plan 506 for Sands Capital Management, LLC, contending that United of Omaha wrongfully terminated his long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff argues that, in terminating his benefits, United of Omaha failed to adequately consider the evidence from his physicians in support of his disability; concluded, without adequate evidence, that he could perform the physical and cognitive aspects of his job as a Portfolio Manager at an investment company; and acted with a conflict of interest.

Now before the Court are the parties' cross motions for summary judgment.[1] ECF Nos. 24 & 25. For the reasons that follow, the Court will grant summary judgment to United of Omaha and deny summary judgment to Plaintiff.

---

[1] The parties also filed a Joint Motion to Amend Scheduling Order to Remove Unnecessary Deadlines and to Cancel Pretrial Conference. ECF 35. The Court will deny that motion as moot.

I.      **BACKGROUND**

From 2001 to 2022, Plaintiff Michael Sramek worked for Sands Capital Management, LLC ("Sands Capital") as a Portfolio Manager.[2] Administrative Record ("AR") 000092, 000393, 001874. Sramek's position as a Portfolio Manager involved investing "billions of dollars" in client funds, analyzing financial documents, attending meetings with clients and co-workers, and traveling to research investment prospects. *Id.* at 000393.

As a Sands Capital employee, Sramek participated in Sands Capital's Group Policy for LTD benefits ("the Policy"). *See* AR 000001-41. The Policy, governed by ERISA, was issued by United of Omaha. *Id.* Under the Policy, Sramek was eligible for monthly long-term disability benefits if he became disabled due to an injury or sickness while insured. *Id.* at 000026. The Policy defined "Disability or Disabled" as, among other things, if an insured was "prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis." *Id.* at 00036. An insured's "Regular Occupation" was defined not as an insured's specific job, but as a "similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles." *Id.* at 000038. The Policy also specified that United of Omaha retained full discretion "to decide all questions of eligibility and all questions regarding the amount and payment of any Policy benefits within the terms of the Policy." *Id.* 000031.

A.      **Sramek Applies for and Receives LTD Benefits**

Several years ago, Sramek developed chronic low back pain. He was eventually diagnosed with lumbar segmental spinal instability, lumbar intervertebral disc disorder, lumbar disk herniation, lumbar spondylosis, and lumbar radiculopathy. AR 000117. After stem cell injections

---

[2]     All citations to the Administrative Record refer to the record received by the Court on July 7, 2025.

failed to cure his pain, Sramek underwent back surgery on October 8, 2022, which involved a replacement of his L4 and L5 disks and an L5-S1 fusion. *Id.* at 000092.

Following his surgery, Sramek applied for LTD benefits and, on November 11, 2022, United of Omaha approved Sramek's application. AR 001810. United of Omaha initially approved Sramek for six to eight weeks of benefits but later extended his benefits to cover the three-month recovery period from his surgery. *Id.* at 001809-10. United of Omaha also advised Sramek that, after the three-month period, it could consider continuing his benefits if he was able to submit medical records showing an inability to return to work full time. *Id.* at 001809.

Sramek continued to experience lower back pain after the surgery and was diagnosed with post-laminectomy syndrome. AR 001244. Based on these conditions, United of Omaha continued to award Sramek LTD benefits through May 2024. *See id.*

**B.     United of Omaha Makes an Initial Decision to Terminate Sramek's Benefits**

On June 10, 2024, United of Omaha conducted a review to consider whether Sramek was still eligible for continued LTD benefits. AR 001244. First, United of Omaha analyzed the nature of Sramek's work and concluded, based on a vocational analysis, that his occupation involved "Sedentary" work "with frequent travel." *Id.* at 001245. "Sedentary work involves sitting, most of the time." *Id.* Sramek also indicated that he was required to travel 100 days per year. *Id.*

Second, United of Omaha reviewed medical records from Dr. Thomas Schuler, Sramek's spinal surgeon, and Dr. Thomas Nguyen, Sramek's pain management physician. *Id.* at 001243-44. It observed that, according to Dr. Schuler's medical notes, Sramek continued to experience low back pain and lower extremity pain and numbness, but his exam findings were normal, and an electromyography and nerve condition studies test showed normal functioning. *Id.* at 001244. During Sramek's last visit, Dr. Schuler recommended that Sramek return in six months and begin

3

physical therapy but did not indicate that Sramek had any work restrictions. *Id.* A CT scan on September 23, 2023, and an X-ray on October 3, 2023, also indicated that the hardware from the surgery were in the appropriate position and there had been no significant degenerative changes in his lumbar spine. *Id.* Meanwhile, Dr. Nguyen's notes showed that Sramek's most recent exam was "normal and unremarkable," that his low back and extremity pain was stable and under fair control, that Sramek was able to sit in a chair comfortably and ambulate across the room without difficulty, and was able to play 50% of the rounds of golf on a recent trip. *Id.* at 001245. Dr. Nguyen nevertheless opined that Sramek was unable to return to work because his occupation required frequent travel. *Id.*

Third, United of Omaha considered the findings of a registered nurse who conducted a medical review of Sramek's file. AR 001245, 001448-1450. The nurse concluded that the information in Sramek's records did not support Dr. Nguyen's opinion that Sramek was unable to perform sedentary work on a full-time basis. *Id.* at 001450.

Finally, United of Omaha considered a report by Dr. Milton, an independent, board-certified neurosurgeon.[3] *Id.* at 001196-1200, 001245-47. Dr. Milton reviewed the occupational analysis of Sramek's position, Sramek's medical records, and his supplementary report of disability. *Id.* at 001196-97. Dr. Milton also claimed that he attempted to contact Drs. Schuler and Nguyen, but was unable to reach them. *Id.* at 001196. Based on his review of Sramek's records, Dr. Milton observed that Sramek continued to experience "persistent low back pain and left lower extremity radiculopathy." *Id.* at 001199. But he concluded that the medical records showed no evidence of "neurological deficits" or "definitive physical limitations" and instead showed that

---

[3] United of Omaha hired a company called Dane Street which, in turn, hired Dr. Milton to perform a medical review. *See* ECF 24 at 6-7. Dr. Milton certified that his compensation was in no way dependent "on the specific outcome of this case." AR 001200.

4

Sramek could "ambulate without difficulty" and has "5/5 strength." *Id*. Based on his review of the records, Dr. Milton concluded that "the weight of the submitted documentation" did not support "restrictions and/or limitations that prevent [Sramek] from performing the full-time functional demand(s) of the claimant's occupation." *Id*.

Weighing this evidence, United of Omaha determined that "there is no medical evidence on file" that supported Sramek's "inability to perform [his] regular occupation as Sr. Portfolio Manager" and terminated his benefits. *Id.* at 001248.

The day after United of Omaha terminated Sramek's benefits, Dr. Schuler wrote to United of Omaha to express his disagreement with its conclusions. AR 001101. Dr. Schuler first noted that he had not received Dr. Milton's attempts to contact him. *Id.* He then expressed that "[p]rolongued sitting" was "very problematic" for Sramek and "travel especially is intolerable." *Id.* Based on his pain, Dr. Schuler opined that Sramek could not sit for more than four hours per day and needed "to avoid prolonged sitting of greater than 30 minutes." *Id.* Sramek also needed to "be able to lie down, take breaks, [and] change positions if needed." *Id.* Lastly, Dr. Schuler observed that Sramek's "pain has proven to be a significant problem for his mentation." *Id.* Given these limitations, Dr. Schuler opined that Sramek is "unable to carry out his job as a fund manager requiring intense mental and physical activity as well as travel." *Id.*

Dr. Milton followed up with Dr. Schuler by faxing him a series of questions. AR 000395-96. In response to Dr. Milton's question of whether Sramek had physical or neurological limitations, Dr. Schuler explained that Sramek has "[c]hronic low back pain" with "continued deconditioning" but no neurological deficits. *Id.* He did not believe Sramek required any restrictions in performing activities of daily living, so long as Sramek continued taking his pain medication. *Id.* When asked to point to supporting documents, Dr. Schuler explained that Sramek

5

"has had multiple spinal procedures and back surgeries resulting in chronic back pain requiring chronic opioid medications. Structurally, he is stable but there is no objective testing for chronic pain." *Id.* at 000395-96.

Dr. Schuler's letter prompted Dr. Milton to draft an addendum to his report in which he acknowledged Dr. Schuler's opinions but observed that "the available documentation remains devoid of any physical examination or office visit documentation from Schuler, MD beyond 12/12/2023." AR 000386. Because Dr. Schuler had not submitted updated medical evidence, Dr. Milton's opinion remained unchanged.

### C.     United of Omaha Denies Sramek's Appeal

On November 22, 2024, Sramek appealed United of Omaha's decision to terminate his LTD benefits. AR 001051. Sramek argued that Dr. Milton did not "account for the mental requirements of Mr. Sramek's job," "the cognitive limitations Mr. Sramek encounters due to his pain and medication," and the "full physical demands of Mr. Sramek's job, including long hours and extensive travel." *Id*. Sramek also argued that Dr. Milton had failed to examine or talk to him.

In support of his appeal, Sramek submitted a declaration in which he explained that his back and leg pain flares up at times and without warning. He stated that, when this occurs, he must lie down or recline and is unable to concentrate on complex decision-making or participate in meetings. AR 001063. It would be very difficult for him to travel as it would cause his back to flare up. Sramek also stated that he takes Lyrica and Oxycodone daily, which make him tired and impair his ability to concentrate and focus. *Id.* While he sometimes has good days and pushes himself to engage in activities such as golf, the next day he often "pay[s] the price for doing so." *Id.* at 001063-64.

6

Sramek also submitted a supplemental letter from Dr. Schuler again opining that Sramek "is disabled and cannot carry out his job as a fund manager with an investment firm." AR 001061-62. Dr. Schuler explained that, while Sramek's quality of life had improved since the surgery, he was still not back to a functional level. Sramek experiences pain and has difficulty concentrating for extended periods. AR 001061. He is unable to sit in long meetings or on long flights on a regular basis and may need to lie down throughout the day. *Id.* And he takes several medications on a regular basis including oxycodone. *Id.* Dr. Schuler stated that Sramek's job, which requires intense mental concentration for longer durations, problem-solving, and a full day's worth of sitting "is not reasonable given the physical limitations that he has." *Id.* Finally, he explained that, while Sramek is able to play golf on some days, when he plays, he does so "with a dose of narcotic medication that would be problematic with his job as a fund manager." *Id.* at 001062.

On appeal, United of Omaha considered Sramek's submission, the materials supporting its initial denial decision, and a plethora of new materials, including (1) additional information from Dr. Nguyen,[4] (2) additional medical records, (3) a new occupational analysis, (4) surveillance of Sramek's activities and a review of internet records, (5) pharmacy information, and (6) an appeal medical review report and addendum reports by Dr. Nava, a board certified doctor of physical medication and rehabilitation. AR 000092.

The occupational analysis concluded that Sramek's occupation, as it exists in the national economy, involves the following physical demands: constant sitting, occasional walking and standing, constant near acuity, and frequent travel. AR 000376. As far as cognitive demands, the occupation entails directing, controlling, or planning activities of others; making judgments and decisions; dealing with people; and frequent memory, concentration and attention. *Id.*

---

[4]    United of Omaha's decision on appeal refers to a questionnaire completed by Dr. Nguyen. AR 000092. This may, however, be an erroneous reference to the questionnaire completed on July 1, 2024, by Dr. Schuler. *Id.* at 000395.

7

Mutual of Omaha's surveillance and online records review demonstrated that, from September to November 2024, Mr. Sramek had played three nine-hole and seventeen eighteen-hole rounds of golf at golf courses up to roughly forty miles away from his home. AR 000235-36. At least six of the eighteen-hole rounds were labeled as "competition rounds." *Id.* Sramek was also seen walking with a backpack and driving. *Id.* at 001478-80.

Meanwhile, Sramek's pharmacy review indicated that he began taking Oxycodone Hydrochloride in 2018 and continued to take what was categorized as a "high" amount. AR 000759.

Lastly, United of Omaha considered a medical review by Dr. Nava.[5] AR 000116. Dr. Nava reviewed Sramek's medical records from July 2022 through December 2024, the letter and questionnaire submitted by Dr. Schuler, the report by Dr. Milton, and the occupational analysis of Sramek's position. *Id.* at 000116. He concluded, based on these records, that Sramek experiences chronic low back pain and needs various work restrictions, including a limit on standing more than 40 minutes at a time and sitting more than 30 minutes at a time. *Id.* at 000119-20. But Dr. Nava concluded that "there is no evidence why the claimant cannot work with the appropriate restrictions and limitations." *Id.* at 000120. Dr. Nava also stated that Sramek did not need any restrictions or limitations due to side effects from his medication. As to "[r]estrictions related to cognitive issues," he "deferred" those "to [another] specialty as this is outside the scope of my expertise." *Id.*

After completing his report, Dr. Nava submitted a "[c]larification" further addressing whether Sramek could perform his full-time job, including the frequent travel. AR 000124-25. In terms of Sramek's physical limitations, Dr. Nava explained that the level of golf and associated travel Sramek was able to engage in was inconsistent with his claimed inability to perform his

---

[5] Like Dr. Milton, Dr. Nava was hired by Dane Street and attested that his compensation was in no way dependent on the outcome of this case. AR 0000116-120.

occupational demands. *Id.* at 000124. Dr. Nava recognized that Dr. Schuler had opined that sitting and travel were problematic for Sramek. But the medical records indicated that, shortly before Sramek's surgery, when his pain was deemed "intractable," Sramek was able to travel to South Carolina and then to Scotland six days later. *Id.* Given his travel and golf, the normal examination findings, and the stability of Sramek's chronic pain, Dr. Nava determined that Sramek could perform the physical demands of the position. *Id.*

As for the cognitive aspects of the position, Dr. Nava noted that Sramek began taking his current opioid medications while he was still working. *Id.* His medical records did not document that Sramek had any cognitive impairments, difficulty focusing, or memory issues; there were no abnormal cognitive screenings; Sramek was working to wean down his use of opioid medications; and he reported no distress. *Id.* Dr. Nava thus concluded that, from the physical medicine and rehabilitation perspective, he did "not find any evidence to support any specific mental/cognitive" restrictions or limitations "due to chronic low back pain or due to any claimed medication related side effects." *Id.* at 000125.

Considering this evidence together, United of Omaha acknowledged that Sramek experiences chronic low back pain. AR 000094. But it decided that the evidence did not support any physical or cognitive restrictions that would prevent Sramek from performing his material duties. In particular, it noted that there was no evidence in the record that demonstrated Sramek to have observed cognitive impairments or difficulties concentrating and that his activity level, particularly his golfing and associated travel, were inconsistent with his claimed inability to sit and travel. *Id.* It thus upheld its decision terminating Sramek's benefits as of June 10, 2024. *Id.* at 000095.

### D. Sramek Files Suit in This Court

On April 3, 2025, Sramek filed a complaint in this Court, alleging that United of Omaha had violated the Policy by concluding that Sramek was not disabled and denying him LTD benefits. ECF 1. After United of Omaha answered and the parties conducted discovery, the parties filed cross motions for summary judgment. ECF Nos. 24 & 25. Those motions are now ripe for review.

## II. LEGAL STANDARD

"Generally, summary judgment is appropriate where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Fine v. Sun Life Assurance Co. of Canada*, 97 F. Supp. 3d 799, 807 (E.D. Va. 2015) (quoting Fed. R. Civ. P. 56(a)). "However, in actions brought under ERISA, summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment . . . do not apply." *Id.* (quoting *Tobey v. Keiter, Stephens Hurst, Gary & Shreaves*, No. 3:13-cv-315, 2014 WL 61325, at *3 (E.D. Va. Jan. 7, 2014), *aff'd* 585 F. App'x 837 (4th Cir. 2014)).

Courts review *de novo* a denial of benefits challenged under ERISA "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the exercise of assigned discretion is reviewed for abuse of discretion." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008) (internal quotation marks omitted). Here, both parties agree that the Policy delegates discretion to United of Omaha and, thus, this Court must review United of Omaha's decisions for an abuse of discretion.[6] *See* ECF 24 at 17; ECF 26 at 20.

---

[6] Sramek argues that the Court must apply a modified abuse of discretion standard here because United of Omaha serves as the claim evaluator and payor and, thus, has a structural conflict of interest. ECF 24 at 17. The Fourth Circuit has explained, however, that "courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by [the] administrator, even if the administrator operated under a conflict of interest." *Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010) (quoting *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008)).

10

Under the abuse of discretion standard, the Court's role is "to see whether the administrator's decision was a product of a 'deliberate, principled reasoning process,' and 'supported by substantial evidence.'" *Geiger v. Zurich Am. Ins. Co.*, 72 F.4th 32, 38 (4th Cir. 2023) (quoting *Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010)). This standard is "highly deferential." *Id.* (quoting *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 168 (4th Cir. 2013)). Courts will not disturb an administrator's decision, even if the Court would have come to a "contrary conclusion independently," so long as a "reasoning mind" would accept that the record contains sufficient evidence to support the administrator's conclusion. *Id.* at 37-38. (first quoting *Williams*, 609 F.3d at 630, then quoting *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011)). Such evidence must be more than a "scintilla" but need not reach a preponderance. *Whitley v. Hartford Life & Acc. Ins. Co.*, 262 F. App'x 546, 551 (4th Cir. 2008).

In assessing whether an administrator's discretionary decision was reasonable under the circumstances, courts consider the following factors set out in *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000):

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 342-43. In an ERISA case, the plaintiff carries the burden of proof to show that an administrator acted unreasonably. *Aisenberg v. Reliance Stand. Life Ins. Co.*, 718 F. Supp. 3d 480, 488 (E.D. Va. 2024).

## III. ANALYSIS

Sramek argues that United of Omaha abused its discretion in terminating his LTD benefits because (1) it failed to employ a reasoned and principled decision-making process, (2) its determinations that Sramek could perform the physical and cognitive elements of his job were unsupported by the record, and (3) it operated under a structural conflict of interest. The Court will address each argument in turn.

### A. Reasonableness of the Decision-Making Process

First, Sramek appears to argue that United of Omaha abused its discretion in terminating his LTD benefits by failing to use a reasoned and principled process to consider the evidence and reach its determination. ECF 24 at 26; ECF 29 at 26.

A plan administrator's decision-making process is reasoned and principled where the administrator conducts a thorough investigation and considers both the complete record and the language of the plan. *Hilton v. UNUM Life Ins. Co. of Am.*, 967 F. Supp. 2d 1114, 1124-25 (E.D. Va. 2013); *see also, e.g., Booth*, 201 F.3d at 344-45 (concluding that the administrator's decision-making process was reasonable where administrators considered all records and evidence and arrived at a decision based on the policy's language and documentation in the record).

United of Omaha followed those guidelines here. In rendering its decision, it assessed, among other things, medical records from Sramek's physicians spanning years, written statements from Sramek's physicians, an occupational analysis, observation of Sramek's activities, information about his prescriptions, and the evaluation of a nurse and two board-certified physicians. AR 000092, 001245-46.

Sramek nevertheless argues that United of Omaha employed an unreasonable process because it failed to give deference to Plaintiff's treating physicians and relied on surveillance and

background checks to assess Plaintiff's current conditions. These arguments fail to persuade. The Supreme Court has soundly rejected the "treating physician rule" in ERISA cases and made clear that administrators need not give treating doctors' opinions any special weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (explaining that administrators need not "accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). And the Fourth Circuit has explained that it is not "unreasonable" for an administrator to seek to verify an individual's claims through surveillance or to rely on that surveillance in rendering a decision. *Larson v. Old Dominion Freight Line, Inc.*, 277 F. App'x. 318, 322 n.* (4th Cir. 2008). Because United of Omaha gathered comprehensive evidence on Sramek's conditions and abilities and consulted multiple board-certified physicians, in accordance with the Policy, the Court concludes that its process was both reasonable and principled.

### B. Adequacy of the Evidence

Next, Sramek argues that United of Omaha abused its discretion because the evidence did not support its conclusion that Sramek could perform the physical and cognitive elements of his job as a Portfolio Manager.

#### 1. Sramek's Physical Abilities

As explained above, United of Omaha determined that Sramek's position as a Portfolio Manager, as performed in the national economy, requires the physical demands of (1) constant sitting, with occasional walking and standing, (2) occasional reaching in all directions, handling, fingering, and keyboard use, (3) frequent talking and hearing, (4) constant near acuity and occasional accommodation, and (5) frequent travel. AR 000376.

Between November 11, 2022, and June 10, 2024, United of Omaha concluded that Sramek was unable to perform at least some of these functions. *See* AR 001810, 001244. But, in June 2024 United of Omaha reconsidered its position, concluding—and then affirming on appeal—that Sramek's condition had improved such that he was able to perform each of these material duties. *Id.* at 000090, 001244.

That decision was supported by substantial evidence. While Sramek faults United of Omaha for not coming forward with definitive proof "that [he] can sit through long meetings and long travel," ECF 24 at 30, it is Sramek who bears the burden of showing that United of Omaha's decision was unsupported by the record, *see Aisenberg*, 718 F. Supp. 3d at 488. He has not done so here.

To begin with, Sramek argues that United of Omaha erred in relying on the reports of Dr. Milton and Dr. Nava because their reports were inconsistent both with each other and with Dr. Nguyen and Dr. Schuler's conclusions. ECF 24 at 23-25. While Drs. Nguyen and Schuler concluded that Sramek could not sit or travel as required by his position, Dr. Milton opined that Sramek's medical records did not "support restrictions and/or limitations that prevent [him] from performing the full-time functional demand(s)" of his occupation. AR 001080, 001140, 001528. Meanwhile, Dr. Nava concluded at first that Sramek could perform the physical demands of his job but could not sit for more than 30 minutes at a time. AR 000120. When asked to clarify and review additional information, Dr. Nava opined that, given Sramek's normal examination findings, his golfing activity, and his associated travel, Sramek did not need restrictions or limitations that would prevent him from performing his job on a full-time basis. AR 000124.

United of Omaha did not err in crediting Dr. Milton and Dr. Nava's conclusions simply because they conflicted with the opinions of Drs. Schuler and Nguyen. Indeed, it is the duty of a

14

plan administrator to "resolve the conflicts," and the Fourth Circuit has recognized that "it is not an abuse of discretion for a plan fiduciary to deny . . . benefits where conflicting medical reports were presented." *Booth*, 201 F.3d at 345 (quoting *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 606 (4th Cir. 1999)). Moreover, Dr. Milton and Dr. Nava's conclusions were *not* inconsistent: both opined that, at the end of the day, Sramek did not require restrictions that would prevent him from performing the material duties of his job. AR 001080, 000124.

Second, Sramek argues that United of Omaha erred in relying on Dr. Milton and Dr. Nava's reports and concluding that he could perform the material functions of his job, when his chronic back pain makes it impossible for him to "constantly sit" or "frequently travel long distances (coast-to-coast and overseas)." ECF 24 at 30. Sramek's occupation, however, as defined in the national economy, does not explicitly require coast-to-coast or international travel. AR 000376; *see also Aisenberg*, 718 F. Supp. 3d at 489 ("In the Fourth Circuit, one's regular occupation is not the specific job that they claim they are unable to perform, but instead one of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties." (internal quotation marks omitted)). All that is required for Sramek's occupation in the national economy is the ability to travel "frequently." AR 000376.

Sramek's medical records belie his claimed inability to sit and travel. Prior to Sramek's surgery, when he reported his pain as being "intractable," his medical records indicate that he was able to travel to South Carolina for two weeks and then almost immediately to Scotland for another week. AR 001792. While Sramek no doubt continues to experience chronic back pain, his medical records indicate that, post-surgery, his back is stable, he has had "[n]o significant degenerative changes," has no restrictions performing activities of daily living, and his "quality of life has greatly improved." *Id.* at 000117-18, 000395-96, 000501, 001291, 001537, 001540. And since his

surgery, Sramek has demonstrated that he is able to be physically active and travel considerably. For instance, he has reported traveling to the Olympic Club in California and taking ten-day trip to Italy. *Id.* at 000425, 000448. Furthermore, during the three-month period from September to November 2024, Sramek was able to play twenty rounds of golf—including "competitive" rounds—at golf courses located up to 40.9 miles away from his residence.[7] *See id.* at 000318-19. Given these activities, it was abundantly reasonable for United of Omaha and Dr. Nava to conclude that the evidence did not support Sramek's claims that prolonged sitting is "very problematic" and "travel especially is intolerable" to an extent that he is unable to perform the material functions of his position. *Id.* at 000397.

Lastly, Sramek argues that United of Omaha's decision was not supported by substantial evidence because its own medical reviewer, Dr. Nava, prescribed limitations on Sramek's ability to sit. ECF 29 at 26. It is unclear whether Dr. Nava continued to recommend these limitations after he clarified his report. Even so, Dr. Nava's limitations do not render United of Omaha's decision unreasonable. The Policy specifically defines "[m]aterial duties" as "the essential tasks, functions, and operations relating to an occupation *that cannot be reasonably omitted or modified*." AR 000036 (emphasis added). United of Omaha thus retained discretion to conclude that Sramek could be offered accommodations, such as alternating between sitting and standing, that would allow him to complete his material duties, especially given the other evidence of his functional capacity. *See DiCamillo v. Liberty Life Assur. Co.*, 287 F. Supp. 2d 616, 627 (D. Md. 2003) (concluding

---

[7] In his opposition to United of Omaha's motion for summary judgment, Sramek argues that, like in *DuPerry*, 632 F.3d 860, United of Omaha erred by dismissing his subjective complaints of pain. In *DuPerry*, the Fourth Circuit concluded that the plan administrator had erred by dismissing the plaintiff's "subjective complaints of pain out of hand, especially where there is objective medical proof of a disease that could cause such pain." *Id.* at 874-75. But in *DuPerry*, the plaintiff presented evidence, including videos, showing that she could only perform "five to ten minutes of work" at a time, "depended on help from her family for most household chores, errands, and shopping," and "generally remained in her bedroom, in which she had a hospital bed and a refrigerator." *Id.* at 865-66. Plaintiff has submitted no comparable evidence here.

16

that, under the language of an LTD plan, a claimant's required accommodations of breaks during sitting did not change the conclusion that he could physically and mentally perform his job as a tax accountant).

In light of the evidence of Sramek's improved pain, functional ability, extensive golf, and recreational travel, the record contains far more than a "scintilla" of evidence supporting United of Omaha's conclusion that Sramek could perform the physical aspects of his job. *See Whitley*, 262 F. App'x at 551.

### 2. Sramek's Cognitive Abilities

Substantial evidence similarly supports United of Omaha's conclusion that Sramek could perform the cognitive aspects of his position notwithstanding his pain and use of prescription opioids.

Sramek's medical records indicate that he began taking opioids in 2018, years before he applied for and received LTD benefits. AR 000154. While Sramek has occasionally reported fatigue, his doctors have consistently listed the side effects from his medication as being "minimal" and reported Sramek as being alert and oriented. *Id.* at 000424, 000435, 000614, 000619-20, 000625-26, 000638, 000862, 000923, 001290-91.

Based on these and other records, Dr. Nava concluded that Sramek's medical records did not demonstrate "any observed cognitive impairments, or difficulties concentrating/focusing, or with memory due to uncontrolled pain, nor is there any abnormal MSEs, cognitive screenings or cognitive testing to support the need for mental/cognitive [restrictions or limitations]" that would prevent the Sramek from performing the cognitive aspects of his job due to chronic pain. *Id.* at 000124. Dr. Nava also determined that there was no evidence in Sramek's medical records to support his need for limitations due to the side effects of his opioid medication. *Id.* at 000125.

The Court recognizes that Dr. Nava's report conflicts with Dr. Schuler's letters in which he explained that Sramek's pain "has proven to be a significant problem for his mentation" and that Sramek takes "a dose of narcotic medication that would be problematic with his job as a fund manager." AR 001062, 001140. But, as explained above, United of Omaha was not required to credit Dr. Schuler over Dr. Nava as Sramek's treating physician.[8] *Black & Decker Disability Plan*, 538 U.S. at 834. Moreover, Dr. Schuler's opinions were largely conclusory and did not cite to any evidence in the record. United of Omaha, therefore, did not abuse its discretion by failing to credit Dr. Schuler's opinion. *See, e.g.*, *Berdeau v. Schaeffler Grp., USA Inc.*, Civ. No. 4:14-cv-02744, 2019 WL 2137474, at *10 (D. S.C. May 16, 2019) (concluding that a plan administrator did not abuse its discretion by failing to give controlling weight to the conclusory opinion of a treating doctor).

Sramek also contends that Dr. Nava's report could not have adequately supported United of Omaha's decision because Dr. Nava initially stated that restrictions related to "cognitive issues" were "outside the scope of [his] expertise." ECF 24 at 23-24. But, in his same report, Dr. Nava indicated that he was able to opine on whether Sramek needed restrictions or limitations as a result of the side effects of his medications. AR 000120. And Dr. Nava later reiterated that he *could* evaluate, from a physical medicine and rehabilitation perspective, whether Sramek required specific cognitive restrictions "due to chronic low back pain or due to any claimed medication related side effects." *Id.* at 000125. Together, Dr. Nava's statements seem to indicate that, while he may not be qualified to evaluate restrictions associated with cognitive disorders, he is qualified to assess cognitive restrictions related to pain and pain medication, rendering his opinion relevant in this context.

---

[8] Even if the Court were to give greater weight to a treating physician, it notes that Dr. Nguyen, not Dr. Schuler, appears to have been in charge of managing Sramek's pain medication.

Given Dr. Nava's opinion, as well as the lack of concrete evidence in the record indicating that Sramek experiences cognitive limitations from his pain or medication, United of Omaha was within its discretion to conclude that Sramek could perform the cognitive requirements of his job.

### C. Conflict of Interest

Finally, Sramek argues that United of Omaha abused its discretion in terminating his benefits because its decision reflected a conflict of interest. ECF 24 at 26.

The presence of a conflict of interest does not, in itself, render an administrator's decision an abuse of discretion. Rather, it is "one factor among many that a reviewing judge must take into account." *Williams*, 609 F.3d at 631 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008)). Where an administrator has taken protective measures to minimize the conflict and there is no indication of inherent bias, the conflict need not "have a significant role in the analysis." *Id.* at 632 (concluding that there was no evidence of inherent bias where an administrator initially awarded a claimant benefits, paid benefits for two years, and then terminated benefits only after referring the decision to two independent doctors); *see also Fine*, 97 F. Supp. 3d at 812-13 (concluding that an administrator's conflict of interest did not render a decision to deny benefits unreasonable where, among other things, the administrator used a third party to review and answer financial questions that arose in connection with claims).

Here, the record indicates that United of Omaha's conflict did not infect its decision-making. As in *Williams*, United of Omaha initially approved Sramek for LTD benefits and continued to pay benefits for almost two years before terminating them. *See* 609 F.3d at 631. And it like in *Willaims* and *Fine*, United of Omaha relied on independent providers to assess Sramek's claims. *See Williams*, 609 F.3d at 631; *Fine*, 97 F. Supp. 3d at 812-13. These measures strongly

suggest that United of Omaha's decision to terminate Sramek's benefits was not the product of bias that could cast doubt on the validity of its decision.

\*   \*   \*

Considering the factors together, the Court concludes that United of Omaha did not abuse its discretion in terminating Sramek's LTD benefits. While the record certainly contains evidence supporting Sramek's claim of disability, United of Omaha's decision was both the product of a deliberate, principled reasoning process, and supported by substantial evidence in the record. The Court, therefore, will not disturb United of Omaha's judgment.

### IV.   CONCLUSION

For the reasons stated above, the Court will grant United of Omaha's Motion for Summary Judgment, deny summary judgment to Sramek, and deny as moot the parties' Joint Motion to Amend Scheduling Order to Remove Unnecessary Deadlines and to Cancel Pretrial Conference by a separate Order to be issued with this Memorandum Opinion.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

January 12, 2026
Alexandria, Virginia